UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **Case No. 20-CV-3945** |
| Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| v. | |
| LIBERTY CHEVROLET, INC., a corporation, also d/b/a Bronx Honda, and | |
| Carlo Fittanto, individually and as a manager of Liberty Chevrolet, Inc., | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("FTC"), for its complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the TILA and its implementing Regulation Z, 12 C.F.R. § 226, and the ECOA and its implementing Regulation B, 12 C.F.R. § 202.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute.   15 U.S.C. §§ 41–58.   The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.   The FTC also enforces the TILA, 15 U.S.C. §§ 1601-1666j, which establishes, *inter alia*, certain disclosure requirements for advertisements promoting closed-end credit transactions, and the ECOA, 15 U.S.C. §§ 1691-1691f, which, *inter alia*, prohibits discrimination on the basis of race, color, or national origin in credit transactions.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, TILA, and ECOA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.   15 U.S.C. §§ 53(b), 57b, 15 U.S.C. §§ 1601-1666j, 12 C.F.R. § 226, 15 U.S.C. §§ 1691-1691f, 12 C.F.R. § 202.

## DEFENDANTS

6.     Defendant Liberty Chevrolet, Inc., also d/b/a Bronx Honda ("Bronx Honda"), is a New York corporation, with its principal place of business at 2541-2543 Tremont Avenue, Bronx, NY 10461.   Bronx Honda transacts or has transacted business in this District.   At all times material to this Complaint, acting alone or in concert with others, Bronx Honda has advertised, marketed, distributed, or offered vehicles to consumers for sale, and Bronx Honda

regularly has assigned the extension of retail credit to an unaffiliated third party finance or leasing source.

7.      Defendant Carlo Fittanto ("Fittanto") is the general manager of Bronx Honda.   At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, and participated in the acts and practices of Bronx Honda, including the acts and practices set forth in this Complaint.     Defendant Fittanto resides in Southbury, Connecticut and, in connection with the matters alleged herein, transacts or has transacted business in this District.

## COMMERCE

8.      At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

9.      Defendants advertise deceptive offers for vehicles and engage in deceptive and unfair practices relating to the sale and financing of vehicles.   Defendants advertise low sales prices but then fail to honor them; falsely tell consumers they must pay additional "certification" and similar charges beyond the advertised sale price to purchase "Honda Certified Pre-Owned" vehicles; falsely represent that consumers must pay substantially more than the New York state statutory limit of $75 for documentation fees; double-charge fees and taxes; and inflate vehicle prices without the consumer's knowledge or authorization.   Defendants also unlawfully discriminate on the basis of race, color, and national origin when acting as a creditor for vehicle financing.   The company specifically directs its employees to charge higher interest rates and

inflated fees in the credit transaction to African-American and Hispanic customers than to non-Hispanic white customers.   Bronx Honda's employees use derogatory terms for African-American and Hispanic customers.   And Defendants have a discretionary pricing policy that permits its employees to mark up interest rates and fees for consumers who finance their vehicle purchases, which results in higher charges to African-American and Hispanic applicants than similarly-situated non-Hispanic white applicants.

### Deceptive Advertising

10.     Defendants disseminate or cause to be disseminated advertisements promoting vehicles for sale at a specific price but then fail to honor those prices.   Defendants use an advertising agency to target predominantly African-American or Hispanic neighborhoods with deceptive advertisements.   In numerous instances, Defendants advertise a particular used vehicle, including the make and model, and the vehicle identification number ("VIN"), accompanied by a dollar amount that Defendants claim "Was" the price, and a lower dollar amount that Defendants claim is "Now" the price, such as, for example:

4

Certified Used 2013 Honda CR-V EX-L SUV (/vehicle-details/used-2013-honda-cr-v-ex-l-2HKRM4H79DH644111)



(/vehicle-details/used-2013-honda-cr-v-ex-l-2HKRM4H79DH644111)

| | |
|---|---|
| Was: | $24,995 |
| Now: | $21,556 |
| Est. Payment: | $285/mo* |

*With approved credit. Terms may vary. Monthly payments are only estimates derived from the vehicle price with a 72 month term 5.9% interest and 20% downpayment. Subject to primary lenders approval.

Get Sale Price Instantly!

Immediately below these representations about the price and monthly payment amount are the claims "Get Sales Price Instantly!" or "Lock in Your Low Price Now!" Below the sales price and monthly payment, Defendants' advertisements include references to an interest rate, but do not disclose an annual percentage rate ("APR") as required by the TILA.

11.     Defendants' representations that consumers can purchase or finance the certified vehicle for the advertised price are false.  In numerous instances, Defendants' sales

5

representatives tell consumers that the price for which a vehicle is advertised to be available "Now" is an error, or that the lower price failed to include an additional certification fee, and that the vehicle can only be purchased for a higher price, or the "Was" price.   Defendants subsequently charge consumers higher sales prices than advertised.

### Deceptive and Unauthorized Charges

12.     In numerous instances, Defendants falsely tell consumers that they are required to pay bogus fees and charges in connection with the sale and financing of certain "certified" vehicles.   In particular, Defendants advertise for sale used vehicles designated "Certified Pre-Owned Honda," a designation permitted by the manufacturer, American Honda Motor Company, Inc. ("American Honda"), under certain circumstances.    Certified Pre-Owned Honda vehicles are inspected, reconditioned, and certified <u>prior</u> to offering the vehicle for retail sale and cannot lose their "certified" status once they are certified.   Certified Pre-Owned Honda vehicles are covered by the manufacturer's seven-year, 100,000-mile warranty.   American Honda prohibits dealerships from charging a separate fee for the warranty.

13.     In numerous internet advertisements, Defendants represent that specific vehicles for sale are certified.   For example, numerous advertisements display the following graphic:



Defendants include this graphic in its advertisements along with the "Was" original price and the "Now" sales price.   American Honda also has advertised these Certified Pre-Owned vehicles on its website Hondacertified.com as certified, and at the "Now" sales price.

14.     In numerous instances, consumers seek to purchase specific vehicles advertised as

6

"Certified" for the advertised sales price, but Defendants represent to consumers, during the sales or finance process, that they must pay an extra "certification" fee.  In some instances, Defendants represent that the lower price does not include the benefits of certification, and in other instances, Defendants represent that consumers must pay the additional fee to receive the seven-year, 100,000-mile warranty.  Defendants charge consumers certification fees of up to $1,995 in addition to the advertised sales price.

15.     Similarly, in many instances, Defendants falsely tell consumers that they must pay "dealer prep," "shop," "reconditioning" or similar fees, as much as $1,495, to cover the cost of vehicle repairs and cleaning for advertised Certified Pre-Owned vehicles.  However, the "Certified Pre-Owned" designation indicates the dealership already has "recondition[ed] any component that does not meet [the manufacturer's] standards," according to American Honda. In numerous instances, Defendants charge consumers buying Certified Pre-Owned vehicles both certification and prep, shop, or reconditioning fees totaling approximately $3,000.

16.     Defendants also falsely tell consumers they must pay inflated documentation fees in order to complete vehicle purchases.  New York state law provides that dealerships may charge consumers a documentation fee of up to $75 to prepare the necessary paperwork to obtain a title and registration for purchased vehicles.  In numerous instances, however, Defendants represent to consumers, and in fact charge consumers, up to $695 in documentation fees when selling vehicles.

17.     Defendants also add charges onto consumers' final price without consumers' consent.  For example, in numerous instances, Defendants inflate the final sales price of vehicles by adding sales tax and certain fees twice in the transactions, without the consumers' knowledge,

when finalizing financing.   When discussing a vehicle's sales price with consumers, Defendants often use a separate sheet of paper called a "four-square," on which Defendants' employees have indicated an agreed-upon price, certain fees, and sales tax.   After Defendants have tallied all the fees and sales taxes on the four-square, Defendants transfer the total price to a retail installment contract or a finance agreement, and then add the sales tax or certain fees a second time on the contracts.   The final sales price is often included in a stack of complex, highly technical documents presented at the close of a long financing process after an already lengthy process of selecting a car and negotiating over its price.   In numerous instances, consumers have not noticed this double-charge, and have paid or financed the extra charges.   Additionally, following completion of the sale, Defendants in numerous instances provide consumers only with the retail installment contracts and finance contracts, not the four-square, to avoid detection.   In other instances, Defendants tell consumers to sign blank contracts, and that the dealership would mail the executed contracts to them on a later date.   After driving the vehicles off Defendants' lot, consumers sometimes learn that the price or required monthly payments are higher than they had agreed to pay.

        18.     In numerous instances, Defendants also inflate the price of the car without the consumer's knowledge or authorization when transferring numbers from one form to another, a practice that Defendants' employees have called adding "air money."   After Defendants and consumers agree on transaction terms for vehicles, including the total sales price and monthly payments, Defendants unilaterally alter the terms of the sales without first informing the consumers.   In these instances, Defendants add up the total price on a four-square for the consumer, and then, unbeknownst to the consumer, input a higher price on the retail installment

contract or finance agreement.   In other instances, Defendants solicit information from the consumer to provide to the finance company and determine the monthly payment to finance the consumer's desired vehicle at an agreed-upon price.   Defendants misrepresent to the consumer the monthly payment amount set by financing company's terms, instead setting a monthly payment higher than that required by the financing company.   Defendants then transcribe a higher total sales price on the contract than the agreed-upon price.   Defendants are thereby able to pocket the difference between what the financing company would have accepted as a monthly payment and the higher monthly payment Defendants direct the consumer to pay.

19.   Examples of the foregoing practices include the following.   In one instance, Defendants advertised a 2014 Certified Pre-Owned Honda CR-V Touring AWD for $28,354. However, Defendants subsequently charged a consumer, among other things, a $1,995 certification fee, a $350 document processing fee, a $493 prep fee, and a $795 shop fee, purportedly for "brakes" and "repairs," even though repairs to brakes and other components are performed as part of the manufacturer's certification.   In sum, Defendants charged more than $3,600 in fabricated fees for this vehicle.   In another instance, Defendants' sale personnel told a consumer that the total price with fees for a vehicle would be $17,391, but the consumer signed a retail installment contract with the sales price of $20,713, the difference being more than $3,000 of "air money."   And in another instance, Defendants first informed the consumer that the total sale price was $54,182 including $4,351 in sales tax, and subsequently recorded the sales price as approximately $60,000 including another $5,300 in sales tax, effectively charging sales tax twice.

**Undisclosed Financing Terms**

9

20.     In many instances, Defendants advertise online, such as in the typical and illustrative example below, and prominently promote the amount of monthly payment without disclosing any other key terms required by the law, including the amount of the down payment, terms of repayment, and the APR:



21.     In many instances, Defendants advertise online, such as in the typical and illustrative example below, and state a rate of finance charge but fail to disclose the rate as an "annual percentage rate" using that term:



22.     These vehicle offers advertising the amount of payment fail to disclose required terms that are necessary for consumers to understand key terms of the advertised offer and are required under the law.

### Discriminatory Vehicle Financing

23.     Defendants arrange financing for consumers' purchase of motor vehicles through third-party financing entities.   Each financing entity provides Bronx Honda with a specific "buy rate," a risk-based finance charge that reflects the interest rate at which the entity will finance a retail installment contract from the dealer.   Defendants obtain and complete consumer applications for credit, obtain consumer credit reports, and verify income to make an initial determination whether a financing applicant will meet the financing entity's underwriting guidelines.   Defendants then submit applications to the financing entity on behalf of consumers.

24.     Defendants maintain a specific policy and practice by which they allow sales personnel to add at their discretion a finance charge called a "dealer reserve" or "markup" to the buy rate.   Unlike the buy rate, the markup is not based on the underwriting risk or credit

characteristics of the applicant.   Defendants communicate to the consumer only the final total

contract rate, which equals the buy rate plus the markup.   The financing entity compensates

Defendants from the increased interest revenue derived from the markup.   Defendant Bronx

Honda compensates employees, including managers such as Defendant Fittanto, with a

percentage of the markup.

25.     Defendants' discretionary pricing policy and practice allows employees to

indiscriminately markup buy rates, limited only by any markup cap imposed by the relevant

financing entity, and fees.

26.     In addition, Defendants have instructed sales personnel to charge

African-American and Hispanic consumers higher markups and additional fees, leading to higher

prices for vehicles.   Defendants have instructed personnel to perform these practices with

African-American and Hispanic consumers only, stating that these consumers have limited

education.   Defendants have told their employees not to attempt these practices with

non-Hispanic white consumers.   Defendants also have used derogatory terms to refer to

African-American and Hispanic consumers.    Information as to each consumer's race, color,

and/or national origin is available and known to Defendants, as Defendants regularly interact

with applicants who make the decisions to grant or deny financing and to set or confirm the

terms and conditions of financing.

27.     At least since 2010, Defendants have charged, on average, African-American and

Hispanic borrowers higher markups than similarly situated non-Hispanic white consumers.

These disparities are statistically significant.   Moreover, Defendants' markups exhibit

statistically significant disparities based on race, color, or national origin that cannot be

explained by non-discriminatory reasons.

28.    Indeed, among thousands of consumers who received motor vehicle financing through Defendants, Defendants charged the average African-American borrower approximately 19 basis percentage points (approximately $163) and the average Hispanic borrower approximately 24 basis percentage points (approximately $211) more in interest than similarly situated non-Hispanic white borrowers.  African-American and Hispanic borrowers received the maximum allowable markup 50% more often than non-Hispanic white borrowers. Non-Hispanic white borrowers did not receive a markup—or received a contract rate below the buy rate—about twice as often as African-American or Hispanic borrowers.

29.    In 2015, Defendants' primary financing entity lowered its markup cap to resolve public allegations of discriminatory discretionary pricing in violation of the ECOA and Regulation B.  Subsequently, Defendants financed approximately 40% fewer contracts through Bronx Honda's primary financing entity and more than doubled its contracts financed through other entities.  Defendants continued to charge both African-American and Hispanic borrowers more than similarly situated non-Hispanic white borrowers.

30.    Defendants' discretionary pricing policy is not justified by a business necessity that could not be met by a less discriminatory alternative.

31.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

32.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

or practices in or affecting commerce."

33.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

34.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## Count I

### Misrepresentations Regarding Advertised Prices

35.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale or financing, or sale or financing of motor vehicles, including through the means described in Paragraphs 10-11, Defendants represent, directly or indirectly, expressly or by implication, that Defendants will sell particular vehicles at specific prices.

36.     In truth and in fact, Defendants do not sell those vehicles at those prices.

37.     Therefore, Defendants' representations as set forth in Paragraph 35 constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

### Misrepresentations Regarding Charges

38.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or financing, or sale and financing of vehicles, Defendants represent, directly or indirectly, expressly or by implication, that in order to purchase vehicles consumers are required to pay specific fees, including certification fees, dealer prep fees, reconditioning fees, shop fees,

14

and documentation fees in excess of $75.

39.     In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 38, consumers are not required to pay specific fees, including certification fees, dealer prep fees, reconditioning fees, shop fees, and documentation fees in excess of $75.

40.     Therefore, Defendants' representations as set forth in Paragraph 38 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count III

## Misrepresentations Regarding Unauthorized Charges

41.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or financing, or sale and financing of vehicles, Defendants represent, directly or indirectly, expressly or by implication, that charges and fees appearing on consumers' sales contracts are for products and services authorized by consumers or are for required state and local sales taxes.

42.     In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 41, the charges and fees appearing on consumers' sales contracts include products and services not authorized by consumers or for sales tax amounts in excess of those required.

43.     Therefore, Defendants' representations as set forth in Paragraph 41 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count IV**

**Unfair Practice Regarding Unauthorized Charges**

44.     In numerous instances, Defendants charge consumers amounts, including additions to the total price, and charge excess fees and taxes, for which consumers have not provided express, informed consent.

45.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that are not outweighed by countervailing benefits to consumers or competition.

46.     Therefore, Defendants' acts or practices as set forth in Paragraph 44 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a), (n).

**VIOLATIONS OF THE TRUTH IN LENDING ACT AND REGULATION Z**

47.     Under Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as amended, advertisements promoting closed-end credit in consumer credit transactions are required to make certain disclosures ("TILA additional terms") if they state any of several terms, such as the monthly payment ("TILA triggering terms").

48.     Under Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(c) of Regulation Z, 12 C.F.R. § 226.24(c), as amended, advertisements promoting closed-end credit in consumer credit transactions are required to state an "annual percentage rate," using that term, if they state a finance charge.

49.     Defendants' advertisements promote closed-end credit and Defendants are subject to the requirements of the TILA and Regulation Z.

16

50.     Pursuant to Section 108(c) of TILA, 15 U.S.C. § 1607(c), every violation of TILA and Regulation Z constitutes a violation of the FTC Act.

## Count V

### Failure to Disclose or Disclose Clearly and Conspicuously Required Credit Information

51.     In numerous instances, Defendants' advertisements promoting closed-end credit fail to disclose, or fail to disclose clearly and conspicuously, TILA additional terms required by the TILA and Regulation Z, including one or more of the following:

  a. The amount or percentage of the down payment;

  b. The terms of repayment, which reflect the repayment obligations over the full term of the loan, including any balloon payment; and

  c. The "annual percentage rate," using that term, and, if the rate may be increased after consummation, that fact.

52.     Therefore, the practices as set forth in Paragraph 51 violate Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as amended.

## Count VI

### Failure to Disclose or Disclose Clearly and Conspicuously an Annual Percentage Rate

53.     In numerous instances, Defendants' advertisements promoting closed-end credit state a rate of finance charge but fail to disclose the rate as an "annual percentage rate," using that term.

54.     Therefore, the practices as set forth in Paragraph 53 violate Section 144 of the

TILA, 15 U.S.C. § 1664, and Section 226.24(c) of Regulation Z, 12 C.F.R. § 226.24(c), as amended.

## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT AND REGULATION B

55.    Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section 202.4(a) of Regulation B, 12 C.F.R. § 202.4(a), prohibit a creditor from discriminating against an applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act, 15 U.S.C. Ch. 41.

56.    Defendants are creditors as defined in Section 702(e) of the ECOA, 15 U.S.C. § 1691a(e), and Section 202.2(l) of Regulation B, 12 C.F.R. § 202.2(l).

57.    Section 704(c) of the ECOA, 15 U.S.C. § 1691c(c), specifically empowers the Commission to enforce the ECOA.   Defendants' violations of the ECOA are deemed to be violations of the FTC Act and are enforceable as such by the Commission under that Act. Further, the Commission is authorized to use all of its functions and powers under the FTC Act to enforce compliance with the ECOA by any person, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests set by the FTC Act.   This includes the power to enforce a Consumer Financial Protection Bureau regulation promulgated under the ECOA, such as Regulation B, in the same manner as if a violation of that regulation had been a violation of an FTC trade regulation rule.

### Count VII

### Discriminatory Financing Practices

58.     In connection with motor vehicle credit transactions, on the basis of race, color, or national origin, Defendants charge African-American and Hispanic applicants on average higher markups and fees than similarly situated non-Hispanic white applicants.

59.     Defendants' acts, policies, and practices as set forth in Paragraph 58 constitute discrimination against applicants with respect to any aspect of a credit transaction on the basis of race, color, or national origin in violation of Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section 202.4(a) of Regulation B, 12 C.F.R. § 202.4(a).

## CONSUMER INJURY

60.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TILA, and the ECOA.   In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

61.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.   The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

62.     Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants'

violations of the ECOA, 15 U.S.C. § 1691 *et seq.*, and its implementing Regulation B, 12 C.F.R. § 202.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), Section 108(c) of the TILA, 15 U.S.C. § 1607(c), Section 704(c) of the ECOA, 15 U.S.C. § 1691c(c), and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the TILA, and the ECOA, by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TILA, and the ECOA, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.


                                    Respectfully submitted,


                                    ALDEN F. ABBOTT
                                    General Counsel


Dated: May 21, 2020                 /s/ Katherine Worthman
                                    KATHERINE WORTHMAN
                                    Federal Trade Commission
                                    600 Pennsylvania Avenue, N.W.
                                    Washington, DC 20580
                                    Phone: (202) 326-2929
                                    Facsimile: (202) 326-3768
                                    Email: kworthman@ftc.gov


                                    MARGUERITE MOELLER
                                    Federal Trade Commission
                                    600 Pennsylvania Avenue, N.W.
                                    Washington, DC 20580
                                    Phone: (202) 326-2905
                                    Facsimile: (202) 326-3768
                                    Email: mmoeller@ftc.gov


                                    Attorneys for Plaintiff
                                    FEDERAL TRADE COMMISSION